This is number 2013-39-56, Russell Kiser v. Lili Reitz, and that's received 15 maps per side, and from New York, Utah. Good morning. May it please the Court. My name is Todd Newkirk, and I represent the appellant, Dr. Russell Kiser, in this matter. I'd like to reserve three minutes for rebuttal. Appellant asks this Court to reverse the trial court's order dismissing this case for lack of ripeness and lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12b-1. Appellant's complaint challenges defendant's, appellee's, regulations in the Ohio Administrative Code prohibiting him from advertising general dentistry procedures which are outside the scope of his declared specialty of endodontics. The regulations themselves, as well as the threat and disciplinary action of the appellee's, have chilled appellant's First Amendment rights and have caused him to forego lawful advertising in violation of the First Amendment. As such, appellant's claims are ripe for three reasons. Appellant is suffering present harm, and it is well established that even a momentary loss of First Amendment rights constitutes irreparable harm, and that's the case even if the regulations create a pull towards self-censorship. Two, there's nothing speculative about the harm caused in this case. The regulations are applicable to the appellant. Under the Dental Practice Act of Ohio, he can be disciplined for a violation of the regulations, and the appellees have threatened him with exactly that. Well, have they actually threatened him? Well, they issued a warning letter in August of 2009, and they didn't specifically say that he would be disciplined, but they said he cannot advertise as he had been. And the nature of the warning letter, specifically in board cases, is that, you know, it is to put the licensee on notice that if he continues the behavior at issue, he will be disciplined, and that is, you know, the board's practice. The third reason that the appellant's claim is ripe is this claim presents a purely legal question, and there's no necessity for further factual development. There's three factors that guide a ripeness inquiry. First, it's the likelihood of the harm coming to pass. Two, the hardship to the parties if judicial review is declined at this time. And third, whether the factual record is sufficiently developed to allow for a fair adjudication of the matter. All three factors work in appellant's favor here. First, the likelihood of harm. The district court found that the lack of ripeness in this case was largely predicated on the lack of formal disciplinary action by the board against that appellant. However, ripeness under this course of jurisprudence in the United States Supreme Court does not rely on whether he has actually been formally disciplined. The Supreme Court... SBA list case. SBA list, that is a recent case. And in that case, it was partly dependent on the fact that only a committee of the Elections Commission had issued a finding and that they had found no actual harm. In this case, if you look at the board's warning letter, it says the Ohio State Dental Board has found a violation of the administrative rules. Could you distinguish list also on the theory that if it were applied in the future in list, we wouldn't know what the facts would be? That case involved a statutory scheme which penalized the telling of lies and there's no indication what the alleged lie would be. Whereas here, we're pretty clear what the facts are, is that right? That is right. It seems like that would be an easier way to distinguish list. That is the case. The Ohio administrative scheme doesn't penalize lies. It penalizes truthful advertising. In fact, the board's warning letter tells him that his choice is either to forego what is the truth and stop advertising a specialty. I guess my question suggests that there might be a difference because here we know exactly what the advertisement is going to be. That's right. The facts are just clear, whereas in SBA, the future facts, we just don't know what they are. That's correct, Your Honor. The Ohio scheme lays out exactly what can't be advertised. I suppose we don't know whether he will be prosecuted, as it were, by the board or not. We don't know whether they would ignore it. All they've done is give a warning. Maybe they're just trying to deter him as opposed to punish him. Yes, Your Honor, that's true. We don't know what the board will do, whether they'll prosecute him or not. But even if they're just deterring him from advertising truthfully, that's a violation of his First Amendment rights. We can't rely on the board to just ignore regulations that they have the duty to enforce. It's violating his First Amendment rights because it's chilling his speech. That's correct, Your Honor. That's correct. First Amendment rights are particularly apt for immediate protection on these kind of pre-enforcement challenges because once they're chilled, that loss is irretrievable. Even a momentary loss is a violation of the First Amendment. What Appellant is left with is a choice between either foregoing his First Amendment rights under the Constitution or intentionally violating what he knows to be a regulation and a rule of the board and what he has been warned about and risking prosecution for that. The Supreme Court has called this the sort of Damocles or Hobson's choice. The First Amendment doesn't allow a governmental body to put a licensee in such a position. Doing so is harmful to the rule of law because it encourages people to either violate the law intentionally in order to test their First Amendment rights or to just forego those rights altogether. Does he have any procedure that he can undertake through the board to test his rights? In other words, does he have to go to federal court? He does not, Your Honor. There is an administrative process that he can take advantage of if he is charged. But he has to be charged by the board before he can take advantage of that. Can he not bring some kind of declaratory judgment action in front of the board or in state court? He cannot, Your Honor. He has to be charged in order to trigger the revised Code 119 administrative process. In fact, the board routinely declines to answer declaratory questions or advisory opinions. They issue policies from time to time. But that is not at the request of a licensee about a certain question. The nature of that administrative process is in itself harmful. When a licensee is charged, there is a notice of opportunity for hearing drafted. And that is a public document. As soon as that document is issued, licensees face loss of reputation, both professionally and personally. There are public allegations of misconduct, obviously. There is a public hearing. There is financial hardship that results from loss of patience seeing that public document. They lose insurance contracts. They lose malpractice coverage. They even lose financing options for various business matters. Those charges are widely circulated. They are reported between boards. There is some harm that is created just by being charged. And even if he is ultimately successful in the administrative process, he is still harmed to a great extent. That is not even counting the fact that his First Amendment rights are harmed before he is even charged. There is substantial harm to the appellant. The district court failed to recognize those harms and seemed to indicate that all this would be made okay as long as he was able to go through the administrative process and challenge the board's rules that way. But I'd like to point out both Elrod and Burns and this court's decision in Connection Distributing v. Reno that even if the statute at issue is applicable and could be enforced, that creates an injury in fact. So that's another hardship to appellant here. That's an injury his First Amendment rights have been taken from him. The third prong is whether the factual record is sufficiently developed to allow for a fair adjudication of the matter. This case really requires no further factual development. There may be some discovery needed about the specific First Amendment requirements, the board's legitimate interest in the regulations, whether the regulations advance that interest, things like that. But it certainly doesn't require him to be charged as the district court seemed to indicate. There's no factual development just from the charge itself other than we know then that the board is in fact enforcing the regulations. You know what the ads are that he wants to do, is that the idea? That's the idea, yes. He had a sign both before the warning letter that he had to take down after the warning letter and he also asked the board about alternative language later on because he feared violation of the board rules. He doesn't want to be disciplined. What he wants to do is use the signs that he had. He would like to use the signs that he had, yes. He just doesn't know whether that will be allowed. Well, the language that he presented to the board for approval was different language and he hoped that that would then be permittable. He doesn't know whether he can do that either. No, he doesn't. So essentially you're saying there are two different sets of facts, each of which he has desired to use in terms of language, but neither of which he's gotten approval from the board on. That's correct. He specifically got the warning letter about his previous sign and then when he proposed alternative language to advertise, the board declined to rule on it but issued a copy of their warning letter along with their denial, clearly indicating to him that you've been warned. Thank you. Thank you. May it please the Court, my name is Catherine Bockbreiter. I represent the Appalachians in this case. Dr. Kizer essentially was asking the Court to issue an advisory opinion on advertising rules that had never been enforced against him. Isn't that true in every ripeness case that deals with pre-enforcement review? Yes, in pre-enforcement review you look at the three factors that Mr. Newkirk discussed and this Court's opinion. Sometimes the courts find things to be ripe on pre-enforcement review, right? They do. That's not an advisory opinion? If it's not ripe, it would be an advisory opinion, and in this case the Court examined those three factors and found that it was not ripe. The first factor is the likelihood of harm, and that involves not just the possibility that the board would possibly sanction him for this activity but a probability. In Norton, this Court noted that First Amendment ripeness is relaxed, but there still has to be a substantial probability that the agency would take action. Why isn't there a probability here? Because the board hasn't done anything to him. They've never taken any action. They've never threatened any action. The board has limited resources, and they're not necessarily going to prosecute every advertising violation that they see, if there even is one. They sent him a warning letter. In 2009 they sent him a warning letter, and then in 2007 he sent signage and the board said, you need to consult with legal counsel, and they sent a copy of the letter from before. They never threatened any action, and they've never... You said 2007, but was that 2011? 2009 and then 2012, I believe. 2012. So in 2012 they reiterate the warning letter by giving him a copy of it? That's correct, but there's a difference between pointing out what the law is and indicating that they're going to take action to enforce it. Well, if they gave him a copy of the previous warning letter, why isn't this the same as another warning letter? You could consider it to be, but even that warning letter doesn't say that they're going to take action against him. But your test was that there's a probability as opposed to a certainty that they're going to take action. Correct, and I don't think that letter even indicates a probability that they would. He's indicated that the board has disciplined many licensees for violations of this, but they've only come up with one case in the past seven years when the board that he says relates to that, but that case does not even charge with the regulations that are at issue here. It was alleged a violation of the minimum standard of care. So there's no indication that the board has taken steps to almost ever enforce these laws, and there's certainly no indication that they intend to enforce them against him. Yes? You know, I think of ripeness in pre-enforcement review cases in light of the Supreme Court cases like Abbott Labs, the classic case. Are you familiar with that? Yes. Like in Abbott Labs, there was no indication that there would be enforcement, but there was current harm not because of the fear of particular enforcement, but because the regulated party had to make an economic decision whether to comply or not. Right. And that was the harm, and that was entirely sufficient in Abbott Labs because they didn't know whether to change their labels or not. If they changed their labels, they'd be doing something that they thought they didn't have to do. But if they didn't change their labels, they took a risk that they were wrong and they'd have to be punished. I don't see how this is different from that, and I don't see how whether they plan to enforce it now or later really relates to that. You have the harm from being on the horns of the dilemma. It seems to be here in a way that was not in SBA list. Well, in Abbott Labs, the issue that the court talked about was that Abbott Labs was a new regulation and that Abbott Labs would have had to expend a large amount of resources to take active steps to change their labels for their drugs. They didn't have to. They could just keep doing what they were doing and risk. They could, and this court has held in Norton and in Amex. Well, how do you deal with that case, though? It seems to be on all fours for ripeness in this case. I don't think so because there's no indication that he has to expend some amount of money to change his conduct. He makes very clear allegations that he's going to lose money because he doesn't get to perform a particular kind of practice. He's limited in the kind of practice he can advertise. It seems to be even stronger. Well, being able to practice is not. I would first say he alleges that there's a chilling effect, or he's asserted that there's a chilling effect, but he hasn't alleged any facts that his speech has actually been chilled. He's never alleged that he took down that sign. The allegation would be that it will make a difference to his practice if he's not able to advertise in this way, on the one hand, and if he does advertise in this way, that he will risk sanctions that are harsh. That's correct, but there is no First Amendment protection for advertising illegal activity and to advertise things outside of... He claims it's not illegal. He does, but... But he can't get an answer to that. In Abbott Labs, they claimed it wasn't illegal. They said it's not illegal for us not to put these names on the label. And in Amex and in Norton, the courts held that that uncertainty, that just not knowing whether you're going to be prosecuted is not a significant enough hardship... But it was in Abbott Labs, though. But it was in Abbott Labs because I think there was an affirmative change that the person had to make to expend a significant amount of money to comply with these statutes. So it's just that there was a lot of money? That's what the court really focused on, I thought, was that there was a large expenditure, and I appreciate... What about the Berry case, then? The Berry case, I think, is different because, number one, that was a decision of the full commission in Berry. In terms of hardship? In terms of hardship, again, in that case... That was what the reasoning was, as I remember. Yes, and in Berry, he actually alleged that he intended to make the speech and did not make the speech because of the commission's actions. There isn't something like that here? I would like to make these things, but I don't do it because of the action. But he hasn't really alleged that. He's alleged that he made the sign, but he's never alleged in his complaint or in the record anywhere that he changed the sign or that he took the sign down. He said that today, but that's not in the record. And in Berry, also, he did not have... It said in that case he had no right to appeal to take any further administrative action at the state level. You mean if they'd gone against him in Berry, he couldn't have gone to court and got review of that? That case, in my understanding, that case said that he had no right to appeal the commission's decision. And in this case, we do have that. And also, the warning letters that are at issue are issued by one or two members of a 13-member board. The full board has never made a determination on any of this advertising. But are the letters sent on behalf of the board? They're sent by the board's supervising member. Any communication that goes out from the board has the board's letterhead on it, but it's not ruled upon by the full board. How would he get the board to decide his case? As Mr. Newkirk indicated, there would be an administrative process where if he were charged with this, if the board ever chose to pursue this... So he has to wait for the board to pursue him before he can get the board to issue a decision? That is correct. He can't petition to have the matter heard? That's correct. The board doesn't have authority to issue declaratory judgments as a court would. Well, if you thought of yourself, if you changed this from being a dentist to being a lawyer, wouldn't this really deter a prudent lawyer from making various claims about the extent of the lawyer's practice if the lawyer knew that the lawyer could be pursued by the bar? It might, and again, anything is possible. But in this case, we don't have that indication that there's a substantial probability that any action is going to be taken. It has to be not just a subjective chill, but a credible threat that they will be harmed. And the evidence that you point to with respect to the credible chill, likely chill, is that the board has not previously enforced this regulation at all. Is that right? I can't say that they've never done it in the history of the world. He's only come up with one case, and that case didn't cite to these rules. And I've represented the board for seven years. I'm not aware of any case where the board has disciplined someone for a violation of their sign or any other type of advertising. And in cases where this court, the Supreme Court, has found that there's a likelihood such as Holder, 150 people have been prosecuted under that statute. Are you aware, or I should ask properly, does the record show whether there have been other warning letters sent to other people? There's nothing in the record about that, Your Honor. And I'm not aware of any. And in Steffel, the plaintiff was twice directly threatened with arrest from the police, and his companion, who was engaging in the same activity, was actually arrested. And in People's Rights Organization, the city had said that it would vigorously enforce. In McGaugh, in contrast, the court found it was not ripe, even though the person had called the ATF, individual plaintiffs had called the ATF and asked if their conduct would violate the law. And the ATF said, yes, it would, and you could be prosecuted. But the court held that that was not, there still was not a substantial threat of prosecution that justified making the case ripe. And that was actually a criminal possible violation. What relevance do you see of the SBA list case? The SBA list has a lot of similarities in that it was not a decision of the full agency. It was a subset of that agency. And here we have a warning letter, which is a very small fraction of the full board. It's even less substantial here because there was a probable cause determination made there, and we don't have a probable cause determination in this case. And the SBA list, this court held that the recommendation of a subset of the agency is not a definitive statement of the agency. And again, there's a difference between stating what the law is or stating there's a violation and bringing an action or threatening to bring action or presenting a credible threat of an action. The board has limited resources and they have prosecutorial discretion, and there's no indication that they've exercised it very frequently in the past or that they have any intention to do so with respect to Dr. Kaiser. And as to the hardship, Dr. Kaiser cites to the Elrod case and talks about First Amendment irreparable harm. Irreparable harm is different from the hardship that you need, imminent hardship that you need to find for ripeness. The Elrod case doesn't discuss standing or ripeness. That case was dismissed for failure to state a claim, and the issue was separation of powers, not ripeness or standing. And the availability... No irreparable harm issue in Abbott Labs, though? Imminent, yes. The hardship was... I'm sorry, in Abbott Labs... I thought you were distinguishing, you were saying there was a harm in addition to this horns of the dilemma in the nature of that there had to be a showing of irreparable injury in sort of injunctive terms. No, I'm not saying that. Dr. Kaiser pointed out that any violation of the First Amendment or he argued that any violation of the First Amendment constitutes irreparable harm, but that's not the question here. That case was not about ripeness or standing. And again, he alleges a chilling effect, but under Morrison, this court held that you have to show more than subjective chilling. You have to show that the agency took action to make a credible threat. And he again has not alleged, he said today, but he hasn't alleged in the record that he took the sign down or that he modified the sign that he proposed. He states a legal conclusion that there is a chilling effect, but that's not sufficient under Iqbal. Why shouldn't the line be drawn between the situation hypothetically where there's just the regulation on the books and there's been no effort to enforce it and there's been no warning letter on the one hand, hypothetically, and a situation where there have been warning letters sent to the individual? Why shouldn't that be the dividing line for ripeness purposes? Because even a warning letter and what was sent in this case was basically a non-answer the second time. And copying the warning letter from before doesn't indicate that the board, a substantial probability that the board is going to take action. Does it matter that the second letter, as I understand it, suggested that he should contact legal counsel? I don't believe so. I don't see how that, can you clarify? Well, I'm just asking you whether the fact that the board's letter or the warning letter said you should contact your legal counsel and suggesting, arguably, that there is going to be a need in the future for him to have legal advice. I see what you mean. No, I think that's just a standard indication that the board is not going to give other people legal advice because they don't represent them. So if they have a question, they should seek legal counsel. I don't think there's an indication that they were saying, you should go get legal counsel because we're coming after you. And as Mr. Newkirk indicated, the board generally doesn't, they speak through their rules, they speak through their public actions. When you contact the board, you're speaking to the board staff, and they can't necessarily give interpretations of the board statute. If they get a repeated question, they might take it to the full board and have them issue a policy statement, as he indicated. But when they get individual questions, they don't have the authority to really do advisory-type opinions. Thank you. Your red light is on now. Oh, thank you. Thanks very much. Ms. Bachbrater indicated that we haven't shown any other licensees that have been disciplined, and that there's no indication that these rules have been enforced or may ever be enforced. That's not what's required here. That only comes into play when there's regulations or laws of historical curiosity. In this case, obviously the board's paying attention. They issued a warning letter. They found that he could not advertise as he had been. And as to the case we cited where the board had taken action in the past, I represented that individual. And although the final charges did not include the challenge statute here, he was required to sign a consent agreement where he made the choice whether to either stop advertising his specialty or to limit his practice to that specialty. And as Ms. Bachbrater said, the board speaks through its rules. And the rule here says that appellant is in violation of their regulations. So that is his only indication about whether he could be prosecuted or not. Morrison does say an affirmative action has to be taken by the agency. There has been an affirmative action here. In fact, two. They issued the warning letter in August 2009. And again in 2012, they issued a warning letter and told him to speak to legal counsel. Taken together, those two things indicate to a reasonable person that if he continues to advertise as he had been or that he wished to, he would be prosecuted. The last thing I want to address is the appellee's indication that this hasn't been ruled upon by the full board. I'm not sure it's dispositive in this case, but the fact that the warning letter is issued on behalf of the board, that the board is involved in the case, that's the deterrent effect. Does the letter say it's on behalf of the board or does it? It does. The first line says the Ohio State Dental Board has recently conducted an investigation of your practice and has concerns, is the first line. The policy they're challenging has been adopted by the full board. Excuse me, I'm sorry? The policy that you're challenging has been adopted by the full board. There's no question about that. That's correct, Your Honor. It's gone through the rulemaking process and been approved by the full board. For all the reasons I've discussed, the appellant asks you to reverse the decision of the trial court dismissing this case under Rule 12b1. Thank you. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?